# 13-2133

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

GEORGE HEATH,

Plaintiff-Appellant,

-against-

JUSTICES OF SUPREME COURT, NEW YORK COUNTY; JUSTICES OF APPELLATE DIVISION (1 DEPT.); JUSTICES OF N.Y. STATE COURT OF APPEALS; JUSTICES OF UNITED STATES DISTRICT COURT (E.D.N.Y.); and JUSTICES OF U.S. COURT OF APPEALS (2d Cir.); each of the above in their Individual and official capacity,

Defendants-Appellee.

On Appeal from the United States District Court
for the Eastern District of New York

### APPEAL BRIEF FOR
### PLAINTIFF-APPELLANT
#### WITH APPENDIX

GEORGE HEATH
Plaintiff-Appellant, Pro Se
329 Patchen Avenue, Suite 3C
Brooklyn, N.Y.  11233-2135
(917) 600-0437



## Table of Contents

Pages

Statement of Subject Matter and Appellate Jurisdiction . . . .    v

Table of Cases . . . . . . . . . . . . . . . . . . . . . .    ii

Statement of Facts . . . . . . . . . . . . . . . . . . .    1

Statement of Issues Presented for Review

    1.  Whether The District Court Abused Its Discretion
       And Deprived Appellant of Due Process by
       Dismissing His Complaint For Failure to Comply
       with Injunction Inapplicable to Instant Case And,
       With Stipulation Allowing For "Judicial Conduct
       Complaints" . . . . . . . . . . . . . . . . .    17

    2.  Whether The District Court Abused Its Discretion
       And Deprived Appellant of Due Process by
       Dismissing His Complaint on The Ground of
       Judicial Immunity, Contingent Upon Undisputed
       Allegations of Nonjudicial conduct. . . . . . .    18

Conclusion . . . . . . . . . . . . . . . . . . . . . . .    22

## Table of Cases

BIVENS v. SIX UNKNOWN NAMED AGENTS OF
  THE FED. BUREAU OF NARCOTICS, 403
  U.S. 388 (1971). . . . . . . . . . . . . . . . . . . .    20

CHEM. MFRS. ASS'N v. NATIONAL RES. DEF.
  COUNSEL, INC., 410 U.S. 116, 134 (1985) . . . . . . .    17

HEATH v. JUSTICES OF SUPREME COURT,
  NEW YORK COUNTY, Civil No. 13-2419 . . . . . . .    15

HEATH v. WARNER BROS. INC., 762 F.2d 990
  (2d Cir. 1985). . . . . . . . . . . . . . . . . . . .    7

HEATH v, WARNER BROS. ENTERTAINMENT
   INC., Civil No. 12-1062 . . . . . . . . . . . . . . .   14

HEATH v. WARNER COMMUNICATIONS
   INC., 1986 Dist. LEXIS 25056 (1986) . . . . . . . . . .   1

HEATH v. WARNER COMMUNICATIONS INC.
   891 F.Supp. 167, 173 (S.D.N.Y. 1995). . . . . . . . . .   10

HEATH v. WOJTOWICZ, Index No. 4055578 . . . . . . .   6

HUMINSKI v. CORSONES, 396 F.3d 53, 57 (2nd Cir. 2005) . .   18

MUREKES v. WACO, 502 U.S. 9, 9-10 (1991) . . . . . . .   18

NEW YORK STATE CRIME VICTIMS BOARD
   v. ABBOTT, 627 N.Y.S.2d 629, 633 (1 Dept. 1995). . . . .   10

NEW YORK STATE CRIME VICTIMS BOARD
   v. ABBOTT, 274 A.D.2d 263, lv.app. dism,
   92 N.Y.2d 100 (1998). . . . . . . . . . . . . . . . .   11

SIMON & SCHUSTER, INC. v. MEMBERS OF NEW
   YORK STATE CRIME VICTIMS BD., 502
U.S. 105 (1991) . . . . . . . . . . . . . . . . . . .   9

WARNER BROS. v. WOJTOWICZ, 73 N.Y.2d 906 (1989). . .   9

WOJTOWICZ v. UNITED STATES, 550 F.2d 786
   (2nd Cir.), cert. denied, 431 U.S. 927 (1976) . . . . . . .   1

WOJTOWICZ v. WOJTOWICZ, Index No, 17916/79

WRAY v. CITY OF NEW YORK, 490 F.3d 189 (2d Cir. 2007) .   19

Statutes, Rules and Constitutional Provisions

Page

Due Process . . . . . . . . . . . . , . . 17, 18, 22

Eleventh Amendment . . . . . . . . . . . . .   19

First Amendment . . . . . . . . . . . . . . .   9

Fifth and Fourteenth Amendment . . . . . . . . .   19

New York Executive Law, Section 632-a. . . . . . .   passim

28 U.S.C. § 455(b)(5)(i) . . . . . . . . . . . .   21

## Statement of the Case

On April 22, 2013, appellant filed a <u>Bivens</u> civil rights action against various judicial bodies which had labored under the erroneous belief that a recently invalidated regulatory statute applied to him, and that he was not the prevailing party in his original complaint decided in 1981; and, consequently applied the theory of res judicata against him repeatedly over several years, while inappropriately and without jurisdiction, administered his private settlement agreement that names him as a beneficiary, to his damage.

On May 24, 2013 Judge Carol B. Amon dismissed appellant's complaint on the ground that it is barred by the filing injunction imposed against him in 1986 in another district court. She failed to read the stipulation contained in the injunction that allows such filing. She also contends that she otherwise enjoys absolute judicial immunity without disputing the validity of his jurisdictional claims .

Case: 13-2133   Document: 25   Page: 5   07/09/2013   984173   27

## Statement of Subject Matter and Appellate Jurisdiction

This appeal is from the May 24, 2013 Memorandum and Order of United States District Court, Eastern District of New York (Carol B. Amon, J.), entered in the Clerk's Office May 28, 2013 (¶ 6)* Notice of Appeal was filed May 29, 2013. In her Memorandum, Justice Amon states correctly that "Plaintiff brings suit against federal and state judges challenging orders [as lacking jurisdiction] that were made" (¶ 6), and immediately contradicts that statement alleging that appellant's "suit is yet another attempt by plaintiff to recover royalties" (¶ 8), so that his complaint "falls within the scope of the filing injunction" (¶ 8), and thereby necessitates dismissal.

Though herself a prime appellee named in the case at bar, neither Judge Amon nor the state defendants who also raised judicial immunity and the alleged injunction violation as a defense, deny that their contested orders and administrative decisions over a 1977 settlement agreement, can be interpreted anywhere near the threshold of approaching the act of adjudication.

---

* Numerals preceded by the page insignia refer to the page number of the Appendix.

– v –

## Statement of Facts

In 1973, film maker Artists Entertainment Complex, Inc. ("AEC") decided to make a movie depicting events surrounding a federal bank robbery committed by John S. Wojtowicz ("Wojtowicz") in return for an unspecified percentage of the film payable to Wojtowicz. Appellant George Heath, instrumental in shaving five years from his prison term as appellate counsel (Wojtowicz v. United States, 550 F.2d 786 (2nd Cir.), cert. denied, 431 U.S. 927 (1976)), also provided literary service to AEC on Wojtowicz behalf in return for 16-2/3% of any funds owing to Wojtowicz.  Heath v. Warner Communications, Inc., 1986 U.S. Dist. LEXIS 25056 (1986).  After the 1975 public premiere of the movie produced by Warner Bros. Inc. ("Warner") entitled "Dog Day Afternoon," neither Wojtowicz nor appellant received their timely share of royalties.  Appellant then solicited attorney William G. O'Donnell ("O'Donnell") to represent the financial interest of Wojtowicz and himself.

On May 4, 1977, AEC operating in partnership with Warner, provided the following Settlement Agreement ("the Settlement"):

> "Defendants will cause to be paid and plaintiff will accept a sum equivalent to 1% of 100% of the net profits … on such basis as similar distributions of profits are made to other parties holding interest in the profits of

1

said film as follows: …[1]6-2/3% to George Heath, to be distributed by Warner Bros., not to exceed 30 days."

After collecting the funds, Warner again illegally froze delivery of such for an excessive period of time. On this occasion, its fraudulent excuse was fear of violating the long anticipated August 11, 1977 enactment of New York's Executive Law, § 632-a. The statute contained an unprecedented liability disclaimer warning that there was a reasonable probability that it would not survive a First Amendment challenge. Upon a thorough and comprehensive analysis by the federal government, it abandoned its plan to adopt such, describing § 632-a as a constitutional cataclysm (124 Cong. Rec. 35, 739 n. 1 (1978)). Notwithstanding, the mechanical application of star decisis along with aggressive promotional techniques employed by Warner, induced 47 states to blindly adopt the law, or a version thereof.

Section 632-a required that profit owing to state, as opposed to federal convicted persons for the sale of their criminal story be released to the Crime Victims Board ("the Board") for a period of five years as compensation to crime victims who obtain court ordered judgments for same. The law, however, was engineered specifically to suppress protected expression regarding classified government operations as opposed to compensating crime victims from every

2

available source as other statutes adequately guaranteed. For example, federal officials successfully pressured Warner to suppress alleged classified evidence that the Queens District attorney had been inappropriately compelled to discontinue procedures to indict the FBI agent who fatally shot Wojtowicz' crime partner whom Wojtowicz confirms had been disarmed during the incident, after the FBI worked out a compromise to forgo its internal investigation of the DA's office for official misconduct.

On September 5, 1977, after more than four months of extreme dereliction of duty by O'Donnell, who repeatedly refused to challenge Warner's unlawful and excessive delay of payment, Wojtowicz canceled his retainer with O'Donnell, terminated his services, and introduced new counsel to represent him. Appellant also discovered that O'Donnell had illegally collaborated with Warner to support its promotional agenda to ensure his own payment under the Settlement. The conspiracy included elimination of appellant's constitutional rights and entitlement rights under the Settlement to obstruct any legal challenge that he was expected to make concerning to the excessive payment delay and the flawed constitutionality of § 632-a.

3

As an intricate part of Warner's sophisticated promotional network designed to publicize § 632-a offering unlimited financial possibilities, Warner orchestrated an international media blitz on November 3, 1977 to announce that it was distributing substantial 'Dog Day' profits over to the Board for victims of Wojtowicz' crime. In truth, Warner had already paid the said victims substantial return for having signed film release agreements and for having served as movie consultants.   Its advertisement was fraudulent, and crime victims vowed to retaliate.

The unlawful monetary gain handed to O'Donnell eventually amounted to more than $50,000.00 owing to crime victims who had recently commenced multimillion dollar lawsuits for unknown royalties expected to accrue decades into the future.

To compensate for the Board's substantial depletion, Warner quickly converted appellant's proceeds into a single escrow account maintained by the Board under Wojtowicz' name.   The conversion was in direct violation of § 632-a, the Settlement, and the ex post facto clause of Article 1, § 10 of the United States Constitution prohibiting retroactive legislation.

4

At a special investigative court session held before Kings County Supreme Court Justice Julian S. Greenspun (<u>Wojtowicz v. Wojtowicz</u>, Index No. 17916/79), Wojtowicz' wife Carmen ("Carmen") became aware of Warner's fraudulent act perpetrated against crime victims, and took an oath of silence in return for royalties due and owing to appellant and to her husband.

The Board's Chairman Edward Morrison testified that Warner had intentionally compromised appellant's constitutional rights to prevent a threatened multimillion dollar lawsuit based on the excessive payment delay that could have conceivably resulted in the absence of a successful inauguration of § 632-a.

Morrison concluded that as a promotional prop, crime victims were not expected to profit from the fraudulent promotion because Warner had already approved an official order issued by the Board, dated October 17, 1977, directing that all property seized from Wojtowicz and from appellant must be handed over to Wojtowicz immediately.

Soon after appellant became aware of Greenspun's unlawful approval of Warner's overt criminal bribe paid to Wojtowicz and to his wife Carmen, he filed a declaratory action in May 1978 in New

5

York County Supreme Court as <u>Heath v. Wojtowicz</u>, Index No. 40555-78 (Shanley N. Egeth, J.). Carmen was awarded an indefinite weekly rate of $150.00 along with attorney's fees, collecting $18,500.00. Appellant sought entitlement under the Settlement and damages against Warner for the excessive and unlawful withholding of funds, the illegal conversion of his interest, and for the clear and malicious retroactive application of § 632-a.

On October 16, 1981, Judge Egeth announced that appellant had won his lawsuit. In reality, Egeth had issued a bad check that bounced. Egeth was in collusion with Greenspun and had dismissed appellant's complaint on the condition that Warner and the Board would maintain an obligation to pay appellant the said 16-2/3 percent "after disposition of all other statutorily mandated payments" issued against Wojtowicz. The Appellate Division and Court of Appeals affirmed this clearly unconstitutionally contradictory and unattainable award without opinion.

Appellant then sought vindication of his constitutional rights by expanding a direct challenge to the constitutionality of § 632-a in federal court, Northern and Southern District of New York. Despite being listed as the undisputed prevailing party before Judge Egeth,

6

both courts denied appellant's action on the ground of res judicata (Heath v. Warner Bros. Inc., 762 F.2d 990 (2d Cir. 1985), with the latter court imposing a permanent injunction prohibiting him from exercising his constitutional right to file any future action challenging the unlawful application of § 632-a, or the constitutionality of the statute itself.

Yet, based on the egregious and serious nature of the constitutional deprivation of property that included a direct assault against crime victims by O'Donnell and Carmen, Justice Mary J. Lowe issued a stipulation warning jurist that the said injunction "should not prejudice plaintiffs' rights to file judicial conduct complaints" 1986 U.S. Dist. LEXIS 25056, ¶ 6.

On May 14, 1987, the Second Circuit Court of Appeals affirmed, and on September 16, 1987, the United States Supreme Court denied appellant's petition for a writ of certiorari.

In 1982, the State Attorney General joined forces with appellant to reverse the horrendous impact of Warner's bribe by filing a complaint challenging Justice Greenspun's jurisdiction to award appellant's property to Carmen or to anyone else. In August 1982, Justice Arthur S. Hirsch vacated Greenspun's decision and order, but

7

not before Carmen had illegally invaded the crime victims' account, depriving three victims of $18,500.00.

As a result, the Board divided some $45,000.00 remaining between three crime victims and closed its escrow account. Warner retaliated by continuing to pay O'Donnell thousand of dollars without anyone's knowledge or consent. On January 18, 1985, when crime victims learned of Warner's unlawful activity, all three filed contempt of court proceedings against the company in Kings County Supreme Court (Index Nos. 3907/78, 12555/81, 6835/82). Evidence revealed, however, that victims had knowledge that Wojtowicz had not been convicted of a state offense so as to confer jurisdiction of § 632-a, resulting in prompt dismissal of their action.

On December 20, 1983, members of the Board returned a portion of appellant's property over to Warner for distribution under the terms of the Settlement.

Warner, clearly infuriated over appellant's perseverance and success, used his funds to file an interpleader complaint in United States District Court, Eastern District of New York, as <u>Warner Bros. Inc. v. Wojtowicz</u>, Civ. No. 84-0903.

After the court candidly informed Warner that the court has absolutely no jurisdiction whatsoever to reverse the Board's quasi-judicial determination to pay appellant, Warner accused the court of dismissing its interpleader complaint without prejudice for the filing of such in New York County Supreme Court where Judge Egeth had illegally collaborated with Justice Greenspun's unconstitutional action.

As expected, the Supreme Court found that the Board had clearly violated § 632-a by prioritizing appellants award of October 16, 1981, and directed that the Board take possession of appellant's royalties and establish a new escrow account. Appellant appealed. The Appellate Division affirmed, and the Court of Appeals reversed the Supreme Court decision as facially unconstitutional. Warner Bros. Inc. v. Wojtowicz, 73 N.Y.2d 906 (1989).

The United States Supreme Court subsequently inspected appellant's constitutional claims against § 632-a in Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd., 502 U.S. 105 (1991), and held unanimously that,

> "Section 632-a amounts to raw censorship forbidden by well-established bedrock principles protecting speech, that it is presumptively inconsistent with the First Amendment and so engrained that we found it so 'obvious' as not to require explanation."

Media and human rights organizations across the nation described the high Court's decision as a long awaited victory for crime victims to acquire needed compensation from every available source. Yet, several courts refuse to grant reimbursement to appellant, contending that § 632-a was "by no means plainly unconstitutional." Heath v. Warner Communications, Inc., 891 F.Supp. 167, 173 (S.D.N.Y. 1995)(decision causing unlawful deprivation of property under § 632-a remains in effect pursuant to res judicata, despite Simon & Schuster); New York State Crime Victims Board v. Abbott, 627 N.Y.S.2d 629, 633 (1st Dept. 1995). Conversely, the district court concedes that "allegations which could not have been and were not raised in the earlier state and federal actions, are not barred by res judicata." Id. at 173.

The Board immediately filed an interpleader complaint on appellant's behalf under Abbott (Diane A. Lebedeff, J.). Appellant commenced a third-party action seeking reimbursement. Wojtowicz, who suffered from cancer and expired in 2006, was so elated by plaintiff's perseverance and continued success, that he informed Judge Lebedeff in open court that he was assigning his portion of the interest under the Settlement over to appellant accordingly.

10

On April 17, 1995, Justice Lebedeff issued a decree under the direction of Warner, that the company must comply with the law and distribute to appellant all funds due owing to him immediately. Carmen had intervened at the hearing however, and testified fraudulently that she had received no payment based on Judge Greenspun's 1979 order.

Lebedeff thereby ordered that Carmen and O'Donnell receive $17,000.00 held by the Board, for a combined sum paid exceeding $90,000.00; that outstanding judgments due and owing to crime victims are null and void pursuant to Simon & Schuster, and that Warner must distribute an additional $12,000.00 of newly accruing royalties to New York City Human Resources Administration ("HRA") in satisfaction of a recent debt that Wojtowicz incurred. Reimbursement sought by plaintiff was denied categorically.

On direct appeal, however, the Appellate Division denied appellant's demand for reimbursement on the ground of res judicata. The Court of Appeals dismissed his application to appeal as improvidently granted on the ground that the lower court decision "fails to determine the action within the meaning of the Constitution." New York Crime Victims Board v. Abbott, 274 A.D.2d 263, lv app

11

dism, 92 N.Y.2d 100 (1998).

On remand January 10, 2000, Judge Lebedeff blatantly and unlawfully retaliated by ordering Warner to continue paying O'Donnell and to discontinue paying the appellant until HRA's debt has been completely satisfied.   Such wholesale unconstitutional discrimination and malicious deprivation of property compelled the State Attorney General to intervene on appellant's behalf and sternly warn Lebedeff that,

> "Mr. Heath is right.  Mr. Heath should be continuing to receive checks from Time Warner now from time to time with respect to his participation under the 1977 agreement."

Judge Lebedeff completely ignored the Attorney General and decided that appellant must await satisfaction of HRA's debt before reimbursement is granted, despite complete absence of any relationship whatsoever between reimbursement and Wojtowicz' debt.

On April 4, 2000, the Appellate Division upheld Lebedeff's decision, and on July 24, 2001, the Court of Appeals reiterated its position that Lebedeff's decision completely "fails to determine the action within the meaning of the Constitution."

12

At a remand hearing October 30, 2001, Judge Lebedeff maintained her deviant position to deprive plaintiff his constitutional right to reimbursement based on res judicata. The Appellate Division affirmed April 23, 2002, and, on July 9, 2002, the Court of Appeals once again maintained its position that Lebedeff's decision "fails to determine the action within the meaning of the Constitution."

On remand October 15, 2003, the Lebedff declared that it will by no means amend her position, and denied relief to plaintiff based on res judicata. On March 19, 2004, the Appellate Division affirmed, and, on May 13, 2004, the Court of Appeals submitted that it could no longer maintain subject-matter jurisdiction over the controversy with the lower court refusing to defy its decision.

On June 9, 2009, New York County Supreme Court Justice Joan A. Madden was informed by an Appellate Division clerk that HRA's debt had been satisfied as early as February 2007, and that HRA had been paid an additional $2,376.00 from Warner to essentially remain silent, which it did. Nonetheless, operating without legal authority or consent, Justice Madden unconstitutionally and without jurisdiction, reduced appellant's entitlement under the Settlement to 16-2/3 percent, despite Wojtowicz' increase on

13

appellant's behalf, and denied reimbursement altogether based on res judicata. The Appellate Division upheld Madden's unlawful decision, but on July 1, 2010 the Court of Appeals reversed on the ground that her decision constitutes an egregious violation of appellant's constitutional rights.

On remand, Judge Madden ignored the mandate announced by the Court of Appeals and issued the same unconstitutional decision that she had made previously. On November 17, 2011, the Appellate Division upheld Madden's decision and imposed an injunction prohibiting appellant from commencing any new proceeding seeking additional royalties from the film. On February 16, 2012, the Court of Appeals denied further review, and, on October 1, 2012 the United States Supreme Court denied appellant's petition for a writ of certiorari.

On March 5, 2012, appellant sought vindication of his federal constitutional rights to reimbursement and damages by commencing a civil rights complaint in United States District Court for the Eastern District of New York as Heath v. Warner Bros. Entertainment Inc., Civil No. 12-1062 (Carol B. Amon, J). On April 30, 2012, the court dismissed appellant's action on the ground of res judicata and the

*Rooker-Feldman* doctrine which bars state court losers from seeking federal court review – despite his status as the prevailing party of October 16, 1981 in Heath v. Wojtowicz Index No. 40555/78; New York State Crime Victims Board v. Abbott, 92 N.Y.2d 1001 (1998); ; New York State Crime Victims Board v. Abbott, 98 N.Y.2d 693 (2002); Heath v. Wojtowicz, 99 N.Y.2d 579 (2003); and Heath v. Wojtowicz, 15 N.Y.3d 768 (2010).

Complicating matters even more, on November 29, 2012, the Second Circuit Court of Appeals affirmed Judge Amon's decision on different grounds, claiming that appellant's action lacks an arguable basis in law or fact. On May 28, 2013, the United States Supreme Court denied appellant's petition for a writ of certiorari.

On April 22, 2013, appellant sought vindication of his federal constitutional rights and damages in United States District Court for the Eastern District of New York as Heath v. Justices of Supreme Court, New York County, Civil No. 13-2419 (Carol B. Amon, J.).  In full compliance with the stipulated waiver outlined in the 1986 injunction, appellant commenced a Bivens complaint alleging that Judge Amon and other unknown justices in their individual and official capacity,  exceeded  the scope of their  judicial authority by (1)

15

acting with actual malice, combined with deliberate indifference to violate plaintiff's constitutional rights, (2) authorizing the unconstitutional retroactive application of a clearly unconstitutional statute to unlawfully deprive him of his property, (3) operating as legislators and (4) by acting palpably with the lack of jurisdiction in serving as superior editors of the Settlement to unlawfully deprive him of his property.

On May 24, 2013, Judge Amon denied appellant's complaint on the ground that his action is barred by the said federal injunction and that she and the other defendants otherwise enjoy absolute judicial immunity from suits for money damages for their judicial actions, even where such actions complained of by appellant was done maliciously. In truth the said injunction simply, "enjoins him from bringing any future action or proceeding against any of the defendants, which arises out of the royalties from the Film or the application of section 632-a in any federal court." And to reiterate, the injunction expressly excludes complaints based on judicial misconduct. 1986 U.S. Dist. LEXIS 25056, ¶ 6.

16

<u>*Argument*</u>

**1  THE DISTRICT COURT ABUSED ITS DISCRETION AND DEPRIVED APPELLANT OF DUE PROCESS BY DISMISSING HIS COMPLAINT FOR FAILURE TO COMPLY WITH INJUNCTION INAPPLICABLE TO INSTANT CASE AND, WITH STIPULATION PERMITTING JUDICIAL CONDUCT COMPLAINTS**

It is crystal clear that Judge Amon lacked authority to expand Justice Lowe's permanent injunction to include a prohibition against suit challenging judges for the sole purpose of having it "fall[] within the scope of the filing injunction" ((¶ 8) when the plain language of the injunction itself allows appellant opportunity to commence a regulatory complaint against judges at the appropriate juncture.

In a Mandate issued June 10, 2013 in <u>Heath v. Warner Bros.</u> <u>Entertainment Inc.,</u> 12-1879, the Second Circuit denied appellees' motion to expand the same injunction, which may otherwise have added support to Judge Amon's unlawful expansive interpretation. <u>Chem. Mfrs. Ass'n v. National Res. Def. Counsel, Inc.</u>470 U.S. 116, 134 (1985). Conversely, because creation of the said injunction was designed solely to suppress Appellant from repeatedly challenging the constitutionality of § 632-a and its unconstitutional retroactive application, and because the United States Supreme Court subsequently adopted his position, Judge Amon no longer enjoys the option of having the injunction modified.

*Argument*

II.   THE DISTRICT COURT ABUSED ITS DISCRETION AND DEPIVED APPELLANT OF DUE PROCESS BY DISMISSING HIS COMPLAINT ON THE GROUND OF JUDICIAL IMMUNITY, CONTINGENT UPON UNDISPUTED ALLEGATIONS OF NONJUDICIAL CONDUCT.

It is horn book law that judges have absolute immunity from suits for money damages for their judicial actions (See, e.g., Murekes v. Waco, 502 U.S. 9, 9-10 (1991), but not nonjudicial conduct. Mireles, 502 U.S. at 11. Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005).

In the case at bar, appellant is careful not to use the instant forum made available by Judge Lowe as a platform to reargue any particular adverse court decision, but to demonstrate collectively, the characterization and appraisal of nonjudicial conduct towers well beyond the pale of judicial functioning that authorizes judicial immunity.

For example appellant argued pursuant to Bivens, that various justices acted with,

> "malice combined with deliberate intention to violate plaintiff's constitutional rights, [and] did so by operating as superior editors of a personal movie contract, exceeding the scope of their judicial authority, by admittedly authorizing the unlawful retroactive application of a clearly unconstitutional regulatory statute, while compromising the terms of the statute to illegally

18

facilitate unlawful seizure of plaintiff George Heath's share of movie royalties to prevent a lawsuit challenging the constitutionality of said statute and its retroactive application, while arbitrarily refusing to issue a clear and unconditional order of reimbursement, in direct violation of plaintiff's Fifth and Fourteenth Amendment, based solely upon the perfunctory application of res judicata" (¶ 19).

Justice Amon's response to such innumerable claims of acts palpably in excess of the jurisdiction of the judge, with nothing more than an admission that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority (¶ 8), falls far short of the equation that guarantees protection conferred under the Eleventh Amendment.

In <u>Wray v. City of New York</u>, 490 F.3d 189 (2d Cir. 2007), the Court held that the trial judge alone was liable for deprivation of plaintiff's constitutional right to a fair trial by his refusal to suppress an unduly suggestive showup identification. In the case sub judice, Warner instructed the New York County Supreme Court April 17, 1995 that it had an obligation and wanted to pay appellant. The court agreed (¶ 57), but subsequently retaliated when reversed on appeal, ordering Warner to discontinue paying him. The Attorney General was compelled to intervene, and severely chastise the court (¶ 39), but

19

to no avail. Certainly, the Court's behavior was clearly beyond an act of a judicial nature.

The October 16, 1981 Supreme Court decision by Judge Egeth, instructing Warner to pay appellant after all outstanding debts against Wojtowicz has been satisfied, to include an indefinite revolving debt by his wife Carmen, amounted to an unconscionable unconstitutional taking of appellant's property by the court, that also deprived Wojtowicz crime victims of their funds as well. Judge Egeth's decision was beyond the pale of anything that could sensibly be called a judicial act, or a legally sound decision. A judge is not free to inflict indiscriminate damage whenever he announces that he is acting in his judicial capacity.

Appellant announced that his complaint was filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), where the Court laid down a rule that it will infer a private right of action for monetary damage where no other federal remedy is provided for the vindication of a constitutional right, based on the principle that for every wrong, there is a remedy.

Throughout 35 years of persistent litigation, at no time has appellant ever sought property that was not owing to him under the May 4, 1977 Settlement Agreement provided by AEC, or the share of

proceeds given to him as a gift by Wojtowicz in 1995 (¶ 48). Use of appellant's property as a promotional prop and then converted and paid to Wojtowicz in an attempt to prevent a lawsuit, with complicity from Judge Greenspun  (¶ 21) was as much as a judicial act of the court paying appellant's proceeds to Carmen base on fraud (¶ 51).

Clear error or a major mathematical miscalculation in the instant case never seems to cease.  For example, Judge Amon candidly admits that 28 U.S.C. § 455(b)(5)(i) precludes her from adjudicating proceedings of which she is a party, but makes an exception for herself, claiming that  appellant has listed "Justices" of her district as opposed to a designated number like that in <u>Bivens</u>. Logically, in <u>Bivens</u> the FBI agents were unknown, making all relevant agents inclusive.   Because Amon possessed specific knowledge that she was the only judge in her district who adjudicated the case of <u>Heath v. Warner Bros. Entertainment, Inc.</u>, and had unlawfully employed the mechanical theory of res judicata against him based on the October 16, 1981 decision of which he was the prevailing party, Amon should have excused herself in accordance with the law.  Although the Second Circuit affirmed the case, it was done so on entirely different grounds.

21

Had Judge Amon removed herself from appellant's case, it would have protected his right to due process, and there is a reasonable probability that the outcome of the case would have been favorable. A different judge would have examined Amon's decision, reaching the inevitable conclusion that where the state found that Wojtowicz had never been convicted of a state offense so as to confer jurisdiction under its regulatory and facially unconstitutional statute to begin with, while also refusing to honor outstanding money judgments owing to victims of his crime as a result, it is difficult to understand how jurisdiction attaches for purposes of res judicata based on an unconstitutional statute – especially where the state's highest court has repeatedly refused to impose such on appellant, describing it as a manifest constitutional violation.

## Conclusion

For the foregoing reasons, appellant pray that the Court reverse the lower court's decision and remand this case for further consideration with the assignment of a different presiding judge.

Dated:  June 20, 2013                          Respectfully submitted,

                                               GEORGE HEATH, Appellant
                                               329 Patchen Ave, Suite 3C
                                               Brooklyn, NY 11233-2135
                                               917-600-0437